I'm not sure about this one. I hope she didn't... Hm? I don't know. Hm? Hm? Okay, will the lawyers please approach the bench and introduce yourself. Parapleza Basi for the defendant's appellant, Magdalena Maslikiewicz. Robert Shipley on behalf of the plaintiff's appellant. Okay. All right, well, the appellant... You're sitting over there. Yeah. Seat's fixed up, but that's all right. We'll take it the way it is. But... That's all right. Do you need any time for rebuttal? No, I'm the appellant. Oh, you're the appellant. Okay, you're in the right place. Okay. I'm sorry. All right. Three minutes for rebuttal. And I'll also say this is my first time in front of the State Appellate Court. Just if you could explain the light system. No, no, don't worry about that. We'll tell you. You'll tell me when I... I'll tell you. So don't worry about it. Thank you. And that microphone, you know, is only a recording device. It doesn't make your voice louder. Okay. Yes, sir. All right. All right, well, how much time do you want for rebuttal? Three minutes, Your Honor. Three minutes. Okay. Let's proceed. May it please the Court, I hereby please advise you for the defendant's appellant, Magdalena Meslakevich. This case arises out of the sale of a single-family home at 4573 North Moody on the northwest side of Chicago, where the defendant sold the home to the plaintiffs. The plaintiffs then sued the defendant. The circuit court found that she was liable for a common-law fraud and consumer fraud, and the defendant argues that both decisions were against the manifest weight of the evidence. Additionally, the common-law fraud judgment was also wrong as a matter of law, based on this Court's precedent. The first holding of the circuit court was against the manifest weight of the evidence, was that the defendant unknowingly made a false statement of material fact. The false statement of material fact came from the residential real property disclosure form, where she said she was unaware of defects in the basement and the foundation. Now, with that form, what she's assigning and certifying to is that she is actually aware, she has actual knowledge of that. In the evidence at trial, there was no evidence that she herself was aware that there were defects in the basement. Perhaps her contractors were. I mean, wasn't there evidence that there had been water infiltration? That's correct, but the circuit court actually ruled in the defendant's favor on the issue of water infiltration, and the plaintiffs did not cross-appeal on that issue. And that was something that had been disclosed to her when she had bought the property. As to the defects in the basement, with the posts and the debris and the electrical wires, she has no expertise, and there is no evidence that she has any expertise as a contractor, architect, engineer, that if she, in fact, you know, when she visited the property, if she saw the basement, that she would know that any of that was effective. What she signed to, was that? The circuit court found that she was living with the contractor, and, you know, this was not an arm's-length situation between her and the contractor. There was no showing of any payments to him of any money, so wouldn't he be her agent? And since he put up a wall over the area where there was garbage and VX and electrical wiring, I mean, VX, you know, has been outdated since 1947. I know it's a little bit, but I'll take it where you're on it. And people have been using VX instead of conduit. It doesn't work, see? It's a violation of the municipal code and everybody's municipal code and the state law and everything else. And if that was laying around there and he put up a wall to hide it, that's her agent. So, I mean, how do you get around that? So, to the agency issue and imputing the knowledge. Right, right. I mean, how do you get around that? First of all, it was never pled. It was never pled in the complaint, this relationship. And everything to do with fraud, consumer law fraud, and common law fraud, needs to be pled with specificity. In fact, we had the Conakry-Suzuki case in front of the Illinois Supreme Court, where it was dismissed in the Supreme Court for dismissal that they couldn't, you know, find that this relationship existed. Doesn't the plaintiff always have the ability to amend their complaint to conform to the proofs? And isn't that what occurred in this case? So, they did. There's some cases where it could be an abuse of discretion. Maybe we'll discuss that. But in terms of the agency relationship, they did amend the complaint and they didn't include this agency relationship. They didn't include any facts related to this agency relationship, which they needed to. They needed to plead this with specificity. And they deposed this Arthur Mazzaluzzi. But I thought, correct me if I'm wrong, but I thought the trial court made a specific credibility finding that she, in fact, had seen the basement prior to the work that was done, and she, in fact, did know what was going on as far as the work. How can we overturn a credibility determination that was made by the trial court? So, it's going to be that you find it's against the manifest weight of the evidence. To find that, I'll point out that there's no indication that she had any expertise in any of these issues, on BX flyers, on any building codes. She herself, even if she saw what was going on, there is no evidence that she would herself have known. There's no evidence that she had a conversation with Midwest Electric that, okay, we're doing this substandard. How about exposed wires? I mean, if she was in the basement, she would have seen exposed wires. I mean, you don't have to have any special education for exposed wires. So, to be honest, I think you might. I would think that you would, to see what was going on there, to necessarily know, okay, this is not how it's supposed to be. And the other thing, too, like the concrete thickness, this front area, the crawl space filled with debris. She would need some kind of expertise, likely need some kind of expertise, in order to have this finding that she knew that these were material defects. She's not testifying, signing. I have knowledge that this is, I have actual knowledge that this is not perfect, but there are material defects. That's pretty much it. But when somebody puts up a wall, okay, to cover an entire area, and they have no reason to put it up except to hide something, I mean, how do you justify that? I mean, why do you put up a wall to cover BX, wires that are exposed, switches, and everything else that's live wires? Why would you put up a wall to cover all that unless you're trying to commit a fraud on somebody? So the defendant didn't do this for her contractor. Her contractor and their subcontractor, someone that she had hired to work on the house. Well, why would they do that themselves unless somebody directed them to do that? Wouldn't they discuss it with the owner? So in the testimony of the owner, she basically left these decisions up to Midwest Electric to make decisions with regards to how to handle it. I mean, my client, she... Well, I mean, would a natural inference from that be that it would be cheaper to put up the wall and hide it than fix it? I mean, isn't that what the inference is? So if you were to do that, you wouldn't be able to get permits from the city, which she didn't. But sort of, you know, just getting to the, you know... And that's another thing. She didn't get any permits. You know, she's been in this business. She's doing this. This is not her first home. She knows you have to have permits, but she doesn't get permits, and she knows she doesn't have permits. And it was... How do you cover that? Well, since the permit process is how we protect potential plaintiffs, and the permit process along with the attorney review period and the home inspection period, it was within the power of the plaintiffs to find out. And if they had exercised ordinary prudence, they would have found out there were no permits, because, in fact, their attorney did ask for copies of all the permits. And on the seller's side, her attorney said, well, you know, look them up for yourself. With the attorney review process, they had the power at that point to say, no one deals off. Give us all the permits, because you advertised this as a renovation. We know you fixed it. So give us all the permits. They didn't. And because of that, ordinary prudence, you know, if they had exercised ordinary prudence, they would have known there were no permits on the property, and that would have made the home basically untellable to a buyer exercising ordinary prudence. However, they went in blindfolded according to this Court's decisions. So would you like us to write a decision that says that it's okay to cover wires and electrical things that don't conform to statute, that it's our right to hide that as long as the owner himself doesn't have actual knowledge of it? Is that what we should write? In this case, that's appropriate, because the buyers are protected by the fact that they can ask to see are there permits. Buyers have protections. So it's the buyer's fault. You should have us write that the buyer should have asked about the permits. And they did ask about the permits, because of the attorney review period. Because in real estate transactions, there are a lot of protections here. With the attorney review period, you can ask for all the permits. And when they didn't get them, at that point they should have said, okay, then it looks like there's no permits. We're not going forward with the sale. You know, part of fraud is reasonable reliance. In this case, anything that might have been covered, anything that would have been said, is not reasonable. The reliance wasn't reasonable because they knew it's having to exercise ordinary prudence. They would have known that there were no permits. And the punishment to the seller in this case is knowing that since buyers have this option under real estate contract, under attorney review, they're not going to be able to sell it. That's a disincentive is that an ordinary prudent buyer will not buy this home because they know it's a renovation. And then in attorney review, they find out there are no permits. In this case, their home inspector told them, make sure you check that you've got permits for everything. Let me ask a question about reliance. So work is done, and she testified that she knew that the work was done. She didn't know what work was done, but she knew it was fixed. What was fixed if she didn't know what was done? And if she makes that representation to the seller, where's the reasonable reliance? I mean, she's just making a representation based on what? Based on her. So the Residential Real Property Disclosure Act. I'm just talking about her representations because she testified that the work was done. She doesn't know what work was done, but she knows that some work was done and that it was all fixed. Well, what was fixed? What was the representation that she was actually making? So that goes in her testimony and in the pictures where, you know, basically her and her trial attorney. I wasn't the trial attorney. He did some things I don't agree with. But they went through, you know, each room and said, okay, in the kitchen, did you have new backsplash, new tiles? In the bedroom, do you have new windows, a new carpet? So they went through everything to get to the point where she could say, okay, it's a complete renovation. And the whole, like every room in the house was renovated. At least that's, you know, I'm just saying it's okay, completely renovated. Now in the basement, there were problems. And so, you know, going back to what I'm saying, what's the protection for a home buyer? But isn't that part of the reliance that she was communicating to the seller is that it was all fixed and it's all good? Yet she doesn't seem to know what was fixed. Right. And to an extent, that's why we have the permit process is that so that if a buyer can say, okay, you fixed it. Show me that it's up to code. Show me that it works. Show me the permits and that it passed inspections. Now her contractors didn't get permits. In a sense, they heard, going back to imputation of knowledge, what her contractors did hurt her or should have hurt her by doing this work without permits. And when the interests are adverse, then McGrath v. BDO, this Court's decision, says you don't impute the knowledge. It hurt her because she would not have been able to sell this home to an ordinary prudent buyer. For whatever reason, the plaintiffs didn't, you know, went through with it anyway. And I should note, too, the plaintiffs, they're now in this situation because their contractor, Mr. Larkin, he fixed the whole basement without getting permits. So it's your position that even though she lived with this man, she never discussed any of these things with him and he never discussed with her what he was doing? Is that your position? Yeah. I'll point to this Court's holdings at the Electric vs. Johnson Construction and Miss Tiller v. Liberty Mutual that, you know, in fighting fraud, you need clear and convincing evidence. You don't presume it, you know. Well, can't she make certain reasonable inferences from the evidence? Well, I think that's, you know, when you have someone who, you know, defended who doesn't, there's no evidence she knows anything about construction or architecture or engineering, that, you know, the kind of conversation they would have would be able to elucidate something and, you know, be something where that would, where she'd communicate, okay, you know, there's no evidence that she knew, okay, BX wires are not good or this slab is only one inch thick. And with, you know, going kind of damages too, if I may, you know, speak a little bit to that, you know, part of the damages is $91,000 for cleaning out the debris in the front, redoing the slab, and replacing the water main. Even if the court affirms a finding of fraud, those damages are themselves excessive because of the fact that it's not affecting livability of the home. They're using the basement. They put a floor over it. They put a bar in it. David Larkin testified that it doesn't affect the structural stability. The only rationale they had for why this would damage them or injure them is that they're going to have to disclose it to the next, you know, when they sell it. But they offer no proof that, you know, in terms of an appraiser or in terms of a real estate broker with a CMA, that this would lower the value of their property. So that holds. Well, you're almost past your time. Do you want to save some time? Yes, I'll save it for tomorrow. Thank you, sir. Thank you. Good morning, Your Honor. Robert Chipman on behalf of plaintiffs' appellees. I'd like to address my comments, if I may, just initially to some of the colloquy that I heard before the bench. First of all, in the briefs, there's an agreement as far as what the standard of review is in terms of deference to the trial court. And to Your Honor's point, what's not addressed in the briefs, and I don't think is acknowledged, is that the deference includes issues regarding credibility pertaining to the witnesses, because it's the trial court who had the opportunity not only to listen to that testimony, but to observe the demeanor of the witness during the course of that testimony. So that's one thing. And, of course, also with respect to the standard of review, a reviewing court may not substitute its own judgment for the trial court when that's fully supported, as I would submit it is to Your Honors in this case, by the trial record, which is before you. To the knowledge issue. In the record, pages in the report of proceedings are 62 to 64. There was a colloquy, an examination that I had with the defendant regarding the scope of her knowledge regarding the repairs, and she was impeached on this issue and eventually acknowledged that she decided what repairs were to be made. Did she consult with Midwest, allegedly, according to her testimony? Yes. But the point is, is that she had testified at that position and was impeached at trial, that she made those decisions. To the substantive work that reflected work that involved concealment of defects, she was not only in the basement, she had the keys to the house, she was the owner of the house, she visited there on a regular basis, but she had actual knowledge that the drywall was being performed because she saw that work. She had actual knowledge that the concrete work was being performed because she saw that work. And, in fact, to the concrete, she testified about the fact that she knew concrete was removed, she knew it was replaced, and she knew that it had looked different. So for the defendant to suggest that they did, excuse me, that she did not have actual knowledge, I would submit to you as belied by the actual record. In terms of reasonable reliance, the plaintiffs testified at length during the course of the trial as to the information that they relied upon. There were a variety of factors. I don't have enough time to go into all of them. But one of them was the initial listing and why that's so important in this particular case, as was also supported by the defendant's testimony on another point on which she was impeached, is the fact that she wrote this listing. This was not puffery. This is not a real estate agent's comments trying to market the property. This is the actual words of the defendant, and that was an exhibit, I believe it was 19 if I'm citing the record correctly, which was the Word document containing the information that she put into the listing. And that included a complete renovation. And so what is a complete renovation? Complete renovation means that everything that has to be corrected in a home, in any type of a structure, is corrected. And clearly that's not what was done here. A complete renovation does not mean that garbage is hidden behind the drywall. It does not mean that the electrical is left open. It does not mean that the plumbing connections are not properly connected. It does not mean that a support post is covered with drywall, as reflected by the photographs, which were admitted into evidence in this case, to conceal the defects. And so what we have here, and this is one of those cases where the old adage about one picture is worth a thousand words, is so important and so applicable, because when your honors take a look at those photographs, they reflect the actual depiction of the defective conditions and how they were concealed. Reasonable reliance also goes to the fact that the Real Estate Disclosure Act, excuse me, the Residential Real Estate Disclosure Form, in which the defendant denied the existence of any defects in the house, and she attested to that, which in that document is included as part of the real estate contract, and she attested to the absence of defects, despite her actual knowledge of the general conditions of the home. And it does include the denial as to water infiltration, which was part of the record here. So, you know, the Bower case that I've cited talks to the fact that a seller must disclose material defects, and that's cited at page 15 of the response brief, and a seller who knowingly discloses false information shall be liable for actual damages. I just want to touch base for a moment on what I think is a very important issue in this case, and that is the applicability of the Consumer Fraud Act to this cause of action. As your honors know, the record reflects that I have made this argument throughout the history of the case, including at trial and the trial court so found, and I would submit to you that it would be appropriate for this court to follow Pleszek v. Jorgensen, because the facts in this particular case demonstrate that the consumer fraud implications are present. And why is that? Why is that? That's because in this particular case, we do not have a casual private sale of a residence from one homeowner to another homeowner. The record is abundantly clear that this property was purchased by a defendant specifically and solely as a commercial endeavor. She purchased the property with the intent to do whatever work that she thought was appropriate and to sell it for a profit. This, in fact, was her business, and the record reflects that she had purchased properties before purchasing the Moody property at issue and subsequent to purchasing the Moody property at issue. So this is not a casual sale. I'm sorry. Let me finish this. She never resided at the property. She never intended to reside at the property. She realized a significant profit from the sale of this property, and it was comparable to the profits that she had realized from prior commercial sales. You know, this indicates a strong profit motive, and I would strongly suggest to your honors that the expense of the defendant's activities is consistent with regular commercial activities. And so for those reasons, I believe that the Consumer Fraud Act is applicable. And it's for those reasons also that it involves the type of commercial transaction contemplated by the Act, and certainly defendant's conduct was deceptive within the meaning of Section 2. The cases that the defense relies upon, the Zimmerman-Lyman cases, are distinguishable because all of those cases involve a casual sale of a residence by the individual who had lived there to another buyer. And so for those reasons, as I articulated in the brief, I don't think that there's a true conflict between the districts because the facts in this case are, if you will, unique and certainly have not been presented to a panel that I'm aware of from my research in this district. On the evidence of damages, I just would say that Mr. Larkin was found to be competent and qualified. Mrs. Pack also testified as to the damages in terms of the billing, in terms of the receipt, in terms of the payment that were made. The defense never challenged in any way, shape, or form that I would submit to your honors the damages here. Certainly didn't have an expert that articulated any contrary evidence with respect to the reasonableness of the suggested scope of work or of the dollar value that has been awarded here as supported by the evidence. So for all these reasons, your honor, and for the reasons articulated in the brief, we respectfully request that the trial court be affirmed. Thank you. Thank you. Thank you. And let's talk about the Consumer Fraud Act. Why do you feel it's not applicable? I feel it's not applicable because of the wording in this Court's 1986 decision in Zimmerman v. Northfield Real Estate, which even though that case dealt with a homeowner selling to a homeowner, the language of the decision was more broader, that this Court declined to extend the scope of the Consumer Fraud Act to individual sellers selling single-family dwellings, and it did not apply to the individual selling single-family homes. In this case, that's what happened. It was an individual selling a single-family home. No, but she was in the business of selling homes. Yeah, she didn't live there. It's not like somebody sold their family home and would be aware of anything that occurred in the house. So the language of Zimmerman is broader than that. It says it's an individual selling it, and it's a case that's been around for 33 years. There have been hundreds of thousands, about millions of sales in Cook County since then. I think it's a precedent that doesn't need to be disturbed. Real estate buyers and sellers are dealing well with it. Now, this is distinguished from the Klejic case where, in that case, it was someone developing a subdivision. He had a trade name. He was a 42-acre subdivision. He was building these homes. He was a home builder. In this case, true, she did live there. I mean, how do you get around the Klejic v. Jorgensen case? How do you get around that? Because this is one individual selling one home. Klejic v. Jorgensen is a home builder. It's someone who was buying a 42-acre building. She's a rehab person. She's rehabbing houses. Isn't that a business? She makes a profit from it. I assume she pays your income tax on the profit. Right. The Zimmerman decision is just applying to individual selling. If you restrict this to just they had to have lived in the home, then, you know, what happens if someone inherits their parent's home and they sell it without them ever living there? What happens if there's a home with two people on the title, one of them lives there, one of them doesn't? Is one of them the consumer product applied to one, not the other? In the case where it's a major commercial operation, like Klejic v. Jorgensen, then, yes, it's commerce. In a case where it's a person, they buy a home, they sell it one at a time. In this case, this is closer to Zimmerman. This isn't really anything like what was going on in Klejic where it was someone who had a trade name, you know, the defendant here. She never said, you know, home is by Magdalena. She never advertised a look at this previous home I sold. She wasn't, you know, kind of building a business out of it like the defendant in Klejic v. Jorgensen. Like I said, this Zimmerman decision says that it's individuals selling to individuals. It doesn't qualify that it had to have been the homeowner. And the General Assembly, you know, in the Carrera v. Smith decision, they mentioned, you know, even though this exception isn't explicitly in the law, the consumer product's been amended by the General Assembly. They haven't touched it. They haven't addressed it. So they've acquiesced to it. They've acquiesced to Zimmerman. And I think that, you know, the broader holding of Zimmerman does work out for, like I said, cases where they inherit the home. And I'll say there are other protections. There's the Residential Real Estate Disclosure Act. You know, there is common law fraud, so it's not as though buyers, you know, in this situation have no protection. Just as like the buyer from a homeowner, someone actually living in it, you know, they have protection, like the Residential Real Property Act, common law fraud, having to, you know, check for permits, you know, attorney review, title assurance. I mean, there is protection. So it's not as though you're taking away protections. I mean, this is just the law. It's been operating for 33 years in the first district in Cook County, and their home sales have been going fine. Thank you. I think that's my time. So thank you, Your Honors. All right. I will shortly have a ruling from it. The Court is adjourned.